IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FILED**
JUN 2 5 2014
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

THOMAS MISERO

v.   C.A. NO. 12-7081

JACOB MATTHEW CHRISTINE, et al.

MEMORANDUM OPINION

SCHMEHL, J.                                                   JUNE 25, 2014

  This civil rights action was originally commenced by plaintiff in the Court of Common Pleas of Northampton County, then removed by defendants Northampton County and Todd Buskirk ("Northampton Defendants") to this court on the basis of federal question jurisdiction. Plaintiff, a former inmate at Northampton County Jail ("NCJ"), brought this 42 U.S.C. 1983 action against the defendants as a result of injuries plaintiff received from an unprovoked attack by a fellow inmate at NCJ with a razor blade. Plaintiff asserts claims for violation of the Eighth and Fourteenth Amendments against defendants Northampton County and Todd Buskirk, the Warden at NCJ, based on theories of failure to protect, creating a risk of danger to plaintiff and adopting and implementing policies, practices and customs that permitted the unregulated possession of razors by inmates at NCJ. Plaintiff also asserts a state law claim against the Northampton Defendants for violation of the NCJ Prison Handbook. Plaintiff asserts state law claims against defendant Jacob Christine ("Christine"), the inmate who allegedly attacked him, and defendant Luis Vanga ("Vanga"), another inmate, for assault and battery and conspiracy. Presently before the Court is the motion of the Northampton Defendants for summary judgment. For the reasons that follow, the motion is granted.

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. and N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

After reviewing the limited record in this matter, the Court finds that there are no material facts in dispute and that the case is suitable for summary disposition.

Plaintiff arrived at NCJ from Garden State Youth Correctional Facility on June 6, 2009. (Misero Dep. at 16). Upon arriving at NCJ, plaintiff was processed and taken to the intake unit. (Misero Dep. at 42). He remained in the intake unit for two days before being transferred to Unit B-2. (Misero Dep. at 47). Plaintiff entered Unit B-2 during the evening of June 8, 2009. (Misero

Dep. at 50). Plaintiff began eating dinner with another inmate with whom he was familiar. (Misero Dep. at 54). While he was eating, plaintiff was summoned over to a cell by Vanga. (Misero Dep. at 56). Plaintiff walked over to Vanga, who was standing in the doorway of the cell. (Misero Dep. at 59). The lights in the cell were turned off. (Misero Dep. at. 60). Vanga asked plaintiff if he had any tobacco. (Misero Dep. at 59). Before plaintiff could respond, Christine, who was hiding in the cell, grabbed plaintiff from behind and pulled him into the cell by his shirt. (Misero Dep. at 61). Christine then began to punch plaintiff in the head. (Misero Dep. at 65).

During the altercation, plaintiff observed a pool of blood on the floor and a razor blade laying in the blood and realized that he had been cut. (Misero Dep. at 67). Plaintiff recognized the razor blade as the type that is distributed in NCJ. (Misero Dep. at 74). Plaintiff testified that the razor blade was taken from a plastic Bic single-blade razor and described it as rectangular with two holes in it. (Misero Dep. at 74-75). Plaintiff identified the razor blade as the type that was sold in the NCJ commissary. (Misero Dep. at 75).

After the altercation, plaintiff walked out of the cell to the correctional officer's booth. (Misero Dep. at 69). When the correctional officer on duty saw plaintiff, he immediately called for a "lock down." (Misero Dep. at 70). Several correctional officers came and placed Christine in handcuffs and took him away. (Misero Dep. at 83). As a result of the attack, plaintiff received 40 stitches in his neck and 11 stitches in his ear. (Misero Dep. at 73).

Plaintiff testified that, prior to the attack, he had never had any prior interaction with Christine that would have given him reason to believe that Christine would assault him. (Misero Dep. at 8, 50). Plaintiff also testified that he had never made any complaints or grievances to

3

NCJ officials that would have made them aware of an excessive risk to plaintiff. (Misero Dep. at 54).

Plaintiff stated that he was previously incarcerated at NCJ in 2007 and that he personally witnessed inmates purchase disposable razor blades at the NCJ commissary. (Plaintiff's Answer to Northampton Count Interrogatories at ¶ 17). Plaintiff also stated that inmates at NCJ were allowed to possess razors in their cells without supervision. (Id.). In addition, plaintiff stated that he had personally witnessed inmates remove the blade from a disposable razor and use the blade for the purpose of cutting their hair. (Id.).

Plaintiff has submitted an affidavit in which he avers, inter alia, that he had personally read numerous newspaper articles regarding the presence of contraband and weapons in NCJ and that another NCJ inmate, Shaun Austin, had been cut across the throat with a razor blade. (Misero Aff. at ¶¶ 5-7, Exh. 1 to Doc. 32). According to plaintiff, these newspaper articles appeared in two local newspapers, *The Morning Call* and *The Express Times,* which were available in NCJ and in fact were "widely distributed." (Id. at ¶¶ 8-9).

The Northampton Defendants have submitted the affidavit of Warden Buskirk, who avers, inter alia, that:

> 3. The shaving razors were primarily provided through Oasis Management Systems Inc., a company that provides inmates commissary items for the correctional setting.
>
> 4. NCJ is one of many correctional facilities that has used the services of Oasis Management Systems, Inc. for commissary items.
>
> 5. Shaving razors were made available to inmates for purchase through the commissary program.
>
> 6. Correctional shaving razors were also made available to indigent inmates along

4

> with other personal grooming items.
>
> 7. The shaving razors that were made available to inmates at NCJ in 2009 were single blade disposable correctional shaving razors which are designed so that the blade breaks into pieces when the outer housing of the razor is tampered with and are intended for the correctional setting to be a safe alternative to standard shaving razors.

(Buskirk Aff., Exh. C to Doc. 31).

Plaintiff has asserted a failure to protect claim against the Northampton Defendants under the Eighth and Fourth Amendments. Plaintiff has the burden of showing that defendants not only knew of, but also disregarded, an excessive risk to plaintiff's health or safety. Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001)(citing Farmer v. Brennan, 511 U.S. 825, 837 (1994). "The official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer, 511 U.S. at 836. The deliberate indifference standard is not satisfied by either negligence or constructive notice. Farmer, 511 U.S. at 841.

The knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Id. In order to survive defendants' motion for summary judgment, plaintiff must produce evidence supporting the inference that defendants "knowingly and unreasonably disregarded an objectively intolerable risk of harm." Beers-Capitol, 256 F.3d at 132 (internal citation and quotation omitted). Knowledge may be shown where the official has actual notice of the risk, Nami v. Fauyer, 82 F.3d 63, 67-68 (3d Cir. 1996), or where the risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information

concerning the risk and thus must have known about it." <u>Farmer</u>, 511 U.S. at 842.

Plaintiff has produced absolutely no evidence that the Northampton Defendants knew or were aware that plaintiff would be assaulted by defendant Christine. Plaintiff was committed to NCJ on June 6, 2009. He was in the intake unit until June 8, 2009, when he was transferred to the B-2 Unit. The assault took place less than one hour after plaintiff was transferred. There is simply no evidence in the record that defendant Buskirk or anyone else at NCJ was aware during the brief amount of time plaintiff was at NCJ of any type of excessive risk to plaintiff's safety. Plaintiff did not have any contact with Warden Buskirk prior to the attack that would have made Warden Buskirk aware of a potential attack on plaintiff. Nor is there any evidence that Warden Buskirk was present at the time of the attack or knew that Christine was in possession of a razor blade. Indeed, plaintiff himself acknowledged in his deposition that he had no reason to believe that defendants Christine and Vanga would assault him. (Misero Dep. at 8, 50).

Plaintiff attempts to impute knowledge to the Northampton Defendants of a previous assault by an inmate with a razor blade at NCJ, solely through a newspaper article published after this incident which he has attached to his amended complaint. Based on the newspaper account of the prior attack, plaintiff claims that the Northampton Defendants must have known that dangerous conditions involving the unsupervised and unregulated use of razor blades by inmates existed at NCJ and then disregarded that risk, resulting in plaintiff's injuries.

In the first instance, as mentioned previously, the Court notes that the article was published on August 12, 2009, two months *after* the assault on plaintiff took place. As such it can hardly be found to have put the Northampton Defendants on notice of unsupervised and unregulated use of razor blades at NCJ *prior* to the attack on plaintiff. Additionally, plaintiff has

not taken any discovery concerning this attack..

Second, even assuming that the Northampton Defendants were aware of the prior incident before plaintiff was attacked, plaintiff has not put forth any evidence that the Northampton Defendants were aware of a "longstanding, pervasive, well-documented or expressly noted" problem of inmate abuse of razor blades at NCJ that would have constituted a substantial risk of harm to plaintiff. Farmer, 511 U.S. at 842.

Finally, the Court notes that plaintiff has not conducted any discovery to establish the facts and circumstances of the other attack. Specifically, he has not established how this incident occurred, the type of razor blade that was used in the prior attack and how the inmate obtained the razor blade.

For all of these reasons, even viewing the evidence in the light most favorable to plaintiff, the Court concludes that a reasonable jury could not find in favor of plaintiff on his failure to protect claim.

Turning to plaintiff's claim under Monell v. New York Department of Social Services, 463 U.S. 658 (1978), the court notes that in Monell, the Supreme Court established that a municipality cannot be held liable under section 1983 for the constitutional torts of its employees by virtue of respondeat superior." McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005). But where a municipal entity's employees violate a constitutionally protected right pursuant to a formal government policy or standard operating procedure long accepted within the governmental entity, the municipality can be found liable. Id. Moreover, because vicarious liability is inapplicable to section 1983 actions, the plaintiff must show that any supervisory official violated the Constitution through the official's own individual actions. A municipal

custom exists when "practices of state officials [are] so permanent and settled as to virtually constitute law." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

As a basis for his Monell claim, plaintiff alleges that "Defendant Buskirk and Northampton County ....enacted adopted enforced and applied customs, policies and practices and procedures at Northampton County Prison wherein they authorized and permitted inmates at Northampton County Prison with unlimited, unsupervised, inadequately unsupervised, unrestricted and uncontrolled access to and use of razors...which were easily manipulated and/or converted and used as weapons by inmates Christine and Vanga." Am. Compl. at 22.

A very salient point is that plaintiff has not presented any evidence that establishes how Christine obtained the razor blade in question. More importantly, plaintiff has not presented any evidence on what NCJ's policy is with respect to distribution of razor blades, what type of razors are permitted and what limitations are placed on distribution of razor blades. Instead, he simply concludes that because a newspaper article reported that a single attack with a razor blade had recently occurred at NCJ, NCJ must have had a policy pursuant to which razor blades were freely available to inmates at NCJ without any supervision or regulation. Plaintiff has not taken the deposition of the Warden or any other prison official or taken any other discovery with regard to his allegation that inmate access to razor blades was unsupervised and unregulated.[1]

---

[1] The only information before the court regarding NCJ's razor blade policy comes from the Buskirk affidavit which was produced by the Northampton Defendants. The affidavit generally avers that razor blades were available for purchase through NCJ's commissary, that the razor blades were made available to indigent prisoners and that the razors distributed were "single blade disposable correctional shaving razors which are designed so that the blade breaks into pieces when the outer housing of the razor is tampered with and are intended for the correctional setting to be a safe alternative to standard shaving razors." Buskirk Aff. at ¶¶ 3-7.

The fact that another inmate may have been attacked by an inmate with a razor blade on one occasion does not translate into a policy or custom on behalf of NCJ that is so "permanent and settled as to virtually constitute law." Beck, 89 F.3d at 971. There is also no evidence as to where that blade in question was obtained from. Again, plaintiff has not taken any formal discovery on his Monell claim As a result, plaintiff's Monell claim must fail as a matter of law.

Lastly, the "state-created danger" theory is a narrow exception to the general rule that the Due Process Clause does not impose "affirmative obligation[s]" on state actors to "guarantee...certain minimal levels of safety and security." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989). To prevail on a state-created danger claim, plaintiff must prove the following four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct;
>
> (2) a state actor acted with a degree of culpability that shocks the conscience;
>
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Sanford v. Siles, 456 F.3d 298, 304-05 (3d Cir. 2006)(quoting Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006)). To prevail on his claim, plaintiff must establish all four of the foregoing essential elements. Sanford, 456 F.3d at 311. Viewing the evidence in the light most favorable to plaintiff, the court finds that plaintiff has failed to establish at least the first two elements and, therefore, his state-created danger claim must fail.

As evidence that the harm caused was foreseeable and fairly direct, plaintiff once again relies solely on a newspaper article which described a previous inmate-on-inmate attack with a razor blade at NCJ. The court reiterates that a single prior attack does not make it foreseeable or fairly direct to the Northampton Defendants that any inmate at NCJ in general, let alone plaintiff in particular, would be attacked by another inmate with a razor blade. Again, plaintiff did not take any discovery about the prior attack concerning what type of razor blade was used in the previous attack, how that inmate obtained the razor blade and what NCJ's policy is with respect to distribution of razor blades at NCJ. As a result, plaintiff has not satisfied the first element.

Even if plaintiff could satisfy the first element, plaintiff has woefully failed to prove that the Northampton Defendants acted with a degree of culpability that shocks the conscience.

"A constitutional violation may occur when the state acts in a way that makes a person substantially more vulnerable to injury from another source than he or she would have been in the absence of state intervention. Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003). However, to prove a violation of substantive due process, and therefore "generate liability, executive action must be so ill-conceived or malicious that it "shocks the conscience" Id. at 417. Under the shocks the conscience standard, "[t]he exact degree of wrongfulness to reach the conscience shocking level depends on the circumstances of a particular case." Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999) . Negligence, by itself, is never enough to satisfy the standard; however, activity "at the other end of the culpability spectrum" is more likely to lead to liability, but liability may also arise from the mid-range of culpability measurement. See id.

Actions will be considered conscience-shocking if the state's activities are in willful

disregard for or deliberate indifference to a plaintiff's safety. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 910 (3d Cir. 1997). "The state's actions must evince a willingness to ignore a foreseeable danger or risk" Id. The degree of wrongfulness required to reach the conscience-shocking level varies depending on the factual context. See Estate of Smith v. Marasco (Smith), 318 F.3d 497, 508 (3d Cir. 2003). In a custodial situation of a prison, deliberate indifference to a prisoner's needs or safety may be sufficiently shocking. Id.

Once again, the Court notes that plaintiff did not take any discovery nor produce any evidence to establish a malicious state of mind on behalf of the Northampton Defendants when distributing razor blades to inmates. Indeed, plaintiff made no attempt to determine the process or reasons that razor blades are distributed. The only evidence before the Court on the issue is plaintiff's statement that the razor blades had to be purchased from the commissary and Warden Buskirk's averment that the razors made available in 2009 were designed so that the blade would break into pieces if the outer housing of the razor had been tampered with. Distributing razor blades in this manner seems on its face a prudent policy and can hardly be said to shock the conscience.

Although plaintiff claims that once inmates became in possession of razor blades, they were unsupervised, he has again not taken any discovery to prove this allegation. In any event,"imperfect enforcement of the policy shows, at most, negligence by the defendants, rather than deliberate indifference." Davis v. Lackawanna County Prison Bd., 2010 WL 1390880 (M.D.Pa. 2010) (holding that an inmate's claim that another prisoner was allowed to come into contact with a razor and assault the plaintiff at most showed negligence rather than deliberate indifference). In short, plaintiff was the victim of a random criminal act by others rather than of

any deliberate actions on the part of the Northampton Defendants. Since plaintiff has not satisfied the first two elements in order to prevail on a state-created danger theory, the Court need not reach the remaining two elements. Sanford, 456 F.3d at 311.

Many courts have observed that violence in prison is common, and to a certain extent unavoidable. See e.g., Riley v. Jeffes, 777 F.2d 143, 145 (3d Cir. 1985), quoting Marchesani v. McCune, 531 F.2d 459, 462 (10th Cir. 1976) ("Prison setting is, at best, tense. It is sometimes explosive, and always potentially dangerous."). Though it may be "tragically unwise . . . to allow inmates access to razor blades" prisons have been given the discretion to determine the policies and procedures for safeguarding prisoners. Redmond v. U.S., No. 04-231, 2006 WL 709347, at *4 (M.D.Pa March 20, 2006)(additional citations omitted). As detailed in the uncontradicted Buskirk Affidavit, NCP did have a policy in place regarding the types of razor blades distributed to prisoners. While the policy may not have been foolproof, the existence of the policy is evidence that the Northampton Defendants were not deliberately indifferent to the risk of harm posed by inmate access to razor blades.

For all of the foregoing reasons, the Northampton Defendants' motion for summary judgment is granted. Since the Court has entered judgment in favor of the Northampton Defendants on the federal claims, the remaining state law claims will be remanded to the Court of Common Pleas of Northampton County.